**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

FELICIA HALE,

          Petitioner,           Case Number: 2:10-CV-10759

v.                                                  HONORABLE AVERN COHN

MILLICENT WARREN,

          Respondent.
_____/

**MEMORANDUM AND ORDER
DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND
DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

**I. Introduction**

This is a habeas case under 28 U.S.C. § 2254. Petitioner Felicia Hale (Petitioner) is a state inmate at the Huron Valley Correctional Facility in Ypsilanti, Michigan. Petitioner filed a *pro se* petition for a writ of habeas corpus challenging her conviction for second-degree murder. Respondent, through the Attorney General's office, filed a response, arguing that Petitioner's claims are without merit. For the reasons which follow, the petition will be denied and the Court will decline to issue a certificate of appealability.

**II. Background**

**A. Facts**

Petitioner's convictions arise from the shooting death of Jimmy Lee Merritt, Jr. (Merritt), the father of Petitioner's three children, on March 18, 2007 at the home he shared with Petitioner. The fatal gunshot was fired by Brandon Edwards (Edwards).

Petitioner was charged with aiding and abetting Edwards in the shooting.

The testimony at trial was as follows.[1]  On the day of the murder Petitioner went with her sister, Lauren Hale (Lauren), to a church service lasting about four hours. Merritt was at the home with their children.  At church, Petitioner and Lauren met up with Sir Gawain Floyd (Floyd), Petitioner's boyfriend.

After church, Petitioner said she wanted to pick up her children but was afraid to go alone because Merritt had previously physically abused her.  As a result, she wanted several people to accompany her.  However, Petitioner did not directly go to the home after church but instead went shopping and to a restaurant with Lauren and Floyd. Eventually, Petitioner, Floyd, and Lauren drove to Edwards' home where they encountered Edwards and Lauren's boyfriend, Paul Tyrus Parker (Parker).

Petitioner, Floyd, Edwards, Parker, and Lauren then drove to the home in a minivan and parked nearby.  Petitioner was aware that Parker had a handgun with him. The testimony was unclear whether Petitioner knew Edwards had a shotgun, which was apparently hidden under his coat.

Petitioner also called her other sister, Leanna Hale (Leanna) and asked her to come to the home.  Leanna arrived separately in an SUV with a cousin, their brother Lawrence Hale (Lawrence), and their two girlfriends.  The SUV was parked down the street.

Petitioner entered the home alone where she encountered Merritt.  Petitioner had her phone on, over which Lauren could hear Petitioner screaming.  At that point, the

---

[1]This description of the facts is a summary from the trial testimony.

minivan and the SUV drove to the front of the home and everyone from both vehicles entered the home, with Floyd kicking down the door.

Parker, Floyd, and others began fighting with Merritt. Merritt's father, who was present in the home, attempted to call 911. However, Petitioner placed her hand on his arm and told him not to call.

Eventually, Merritt retreated to a back bedroom with two of the children and closed the door. Someone kicked down the bedroom door and the men, joined by Edwards, resumed fighting. Petitioner was also present in the bedroom and was able to remove one of the two children. Merritt was on his knees when Edwards fired a shot. One of the children was still in the room and near Merritt when the shot was fired.

After Merritt was shot, everyone left the home. Petitioner and others went to Edwards' home.

An assistant medical examiner testified that Merritt died as a result of a gunshot wound to the left shoulder. The autopsy also showed Merritt suffered injuries consistent with being severely beaten.

### B. Procedural History

At trial, the prosecution argued that Petitioner, who was older than most of the men involved, put the events into motion which resulted in Merritt's death under the aiding and abetting theory. At the close of the prosecution's case, Petitioner moved for a directed verdict  The trial court denied the motion, finding sufficient evidence from which a rational trier of fact could find that Petitioner aided and abetted in Merritt's murder. The trial court stated in part:

> . . . if the jury believed that you set into motion under the aiding and

abetting theory, you set into motion these two cars filled with people to come to that house on that date and time and that you were going to get you babies out of that house, and that's what the testimony is, that you were going to get your babies out, that they could look at it and they could draw from that certain inferences. One of those inferences is that you had an affair, okay, and that you were leaving this gentleman and that you were going to take these children. He was not going to give you these children back and the evidence shows that you had some sort of conversation with the alleged victim in this case where he informs you he's not going to let you take the babies; that you get in your car with a certain number of individuals; that one person is seen with a handgun, although there's some disputed testimony as to whether or not one of the gentleman had something hid under a coat which would have been if they buy the testimony, could likely have been the shotgun that was used to kill the alleged victim in this case. That you set all that in motion . . .

(Trial transcript, Doc. 6-8, pages 20-21).

The jury convicted Petitioner of second-degree murder. On August 8, 2007, the trial court sentenced Petitioner to 22 to 60 years in prison.

Petitioner filed an appeal of right in the Michigan Court of Appeals, presenting the following claims:

I. The trial court erred as a matter of law by refusing defense counsel the opportunity to allocute on [Petitioner's] behalf prior to the imposition of sentence.

II. The trial court interfered with Ms. Hale's right to present a complete defense by restricting her counsel's examination of witnesses regarding specific instances of the deceased's history of physical abuse toward [Petitioner] and refusing to grant the involuntary manslaughter jury instruction, thereby depriving [Petitioner] of her constitutional right to due process of law and a fair trial.

III. The trial court abused her discretion in denying defense counsel's motion for directed verdict when the prosecution failed to introduce sufficient evidence to establish [Petitioner's] guilt for the offense of murder in the second degree beyond a reasonable doubt even when the evidence is taken in a light favorable to the prosecution.

The Michigan Court of Appeals affirmed Petitioner's conviction. *People v. Hale*, No. 280680, 2009 WL 103656 (Mich. Ct. App. Jan. 15, 2009).

4

Petitioner's application for leave to appeal in the Michigan Supreme Court was denied. *People v. Hale*, 485 Mich. 861 (2009).

Petitioner then filed the pending habeas petition. She raises the same claims raised in state court.

### III. Standard of Review

28 U.S.C. § 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (*quoting Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (*quoting Williams*, 529 U.S. at 413). However, "[i]n order for a federal court to find a

5

state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 789 (2011), *quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87 (internal quotation omitted).

Additionally, a federal habeas court must presume the correctness of state court factual determinations. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

### IV. Analysis

#### A. Right to Allocution

In her first claim, Petitioner argues that she is entitled to resentencing because the trial court violated her right to allocution in violation of Mich. Ct. R. 6.425(D)(2)(c). "'[F]ederal habeas corpus review does not lie for errors of state law.'" *Estelle v.*

6

*McGuire*, 502 U.S. 62, 67 (1991) (quoting *Louis v. Jeffers*, 497 U.S. 764, 780 (1990)). "A federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 67-68.

Petitioner's claim that the sentencing court violated her right to meaningful allocution prior to sentencing is not cognizable on habeas corpus review. The Supreme Court has held that a trial court's failure to ask a defendant whether "he has anything to say before sentence is imposed is not of itself an error of the character or magnitude cognizable under a writ of habeas corpus." *Hill v. U.S.*, 368 U.S. 424, 428 (1962).

Because there is no constitutional right to allocution, Petitioner's claim is not cognizable on federal habeas review *See Golf v. Bagley*, 601 F.3d 445, 464 (6th Cir. 2010) (holding there is no right to allocution under the federal constitution); *Pasquarille v. United States*, 130 F.3d 1220, 1223 (6th Cir. 1997) (same). As such, she cannot obtain relief on this ground.

### B. Right to Present a Defense: Evidence of Abuse and Jury Instruction

Petitioner next claims that she was denied a right to present a defense. First, she argues that the trial court unfairly restricted her examination of witnesses regarding Merritt's history of physical abuse against her. Second, Petitioner argues that the trial court erred in denying the request for an involuntary manslaughter instruction.

**1.**

The right of a defendant to present a defense has long been recognized as "a fundamental element of due process of law." *Washington v. Texas,* 388 U.S. 14, 19 (1967). It is one of the "minimum essentials of a fair trial." *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). While the right to present a defense is a fundamental tenet

7

of due process, "a defendant's right to present evidence is not unlimited, but rather is subject to reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 308 (1998). Indeed, "[a] defendant's interest in presenting . . . evidence may thus bow to accommodate other legitimate interests in the criminal trial process." *Id.* (internal quotations omitted). The Supreme Court has emphasized that "the Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules." *Marshall v. Lonberger*, 459 U.S. 422, 438 n. 6 (1983).

Here, the Michigan Court of Appeals held that the trial court properly balanced Petitioner's right to present a defense and the goal of excluding irrelevant testimony. The Michigan Court of Appeals found:

> the trial court did not preclude her from offering evidence of Merritt's history of domestic violence. The court permitted defendant to testify regarding prior incidents of both physical and sexual abuse by Merritt, and also permitted defense counsel to cross-examine defendant's sisters about Merritt's history of domestic violence. In the instances where the court limited defense counsel's examination of defendant, the court was enforcing evidentiary rules against leading questions, MRE 611(c)(1), and the presentation of irrelevant testimony, MRE 402, by preventing excessive inquiry into the details of the underlying assaults. A criminal defendant's right to present a defense is not infringed by the exclusion of irrelevant evidence. Unger, supra at 250, 749 N.W.2d 272. Defendant has not established that the evidentiary rules enforced by the trial court were arbitrary or disproportionate to the purposes they were designed to serve, and the court's enforcement of those rules did not violate defendant's constitutional right to present a defense.

*People v. Hale*, 2009 WL 103656 at *2.

The court of appeals' conclusion is not contrary to nor an unreasonable application of Supreme Court precedent. Petitioner was in fact able to present evidence regarding Merritt's history of physical abuse sufficient to satisfy her right to present a

8

defense. Habeas relief is not warranted on this ground.

**2.**

Regarding the jury instruction, the Michigan Court of Appeals held that the trial court properly denied the request for an involuntary manslaughter instruction because the instruction was not supported by the record. Under Michigan law, involuntary manslaughter is "the unintentional killing of another, without malice, during the commission of an unlawful act not amounting to a felony and not naturally tending to cause great bodily harm; or during the commission of some lawful act, negligently performed; or in the negligent omission to perform a legal duty. . . . It is established if the defendant acts in a grossly negligent, wanton, or reckless manner, causing the death of another." Hale, slip op. at 2-3 (internal quotations omitted)." However, none of the theories advanced or testimony at trial supported an involuntary manslaughter instruction. As the Michigan Court of Appeals explained:

> In this case, defendant never theorized that she acted in a grossly negligent manner. Instead, the defense theory was that defendant acted reasonably by bringing several people to her home because she feared going there alone. Defendant did not engage in any inherently grossly negligent acts that were the legal cause of the victim's death. See People v. Zak, 184 Mich.App. 1, 8–9, 457 N.W.2d 59 (1990). Thus, an instruction on involuntary manslaughter was not supported by a rational view of the evidence, and the trial court's refusal to instruct on that offense did not hinder defendant's defense. Furthermore, any error in failing to instruct on involuntary manslaughter was harmless because the trial court instructed the jury on the intermediate offense of voluntary manslaughter, but the jury convicted defendant of second-degree murder instead. Gillis, supra at 140 n. 18, 712 N.W.2d 419; People v. Wilson, 265 Mich.App. 386, 396, 695 N.W.2d 351 (2005).

People v. Hale, 2009 WL 103656, *3 (Mich. App. Jan. 15, 2009). The court of appeals' conclusion is reasonable. Petitioner is therefore not entitled to habeas relief on this

claim.

## C. Sufficiency of the Evidence

Finally, Petitioner argues that the prosecution failed to present sufficient evidence to satisfy the malice element of second-degree murder.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). "Two layers of deference apply to habeas claims challenging evidentiary sufficiency." *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010) (citing *Brown v. Konteh*, 567 F.3d 191, 204-05 (6th Cir. 2009)). First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown*, 567 F.3d at 205, (citing *Jackson v. Virginia,* 443 U.S.307, 319 (1979)). Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.* Indeed, the *Jackson* standard is "exceedingly general" and therefore the Michigan courts are afforded "considerable leeway" in its application. *Davis v. Lafler*, 658 F.3d 525, 535 (6th Cir. 2011).

Under Michigan law, the elements of second-degree murder are: (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse. *People v. Goecke*, 579 N.W.2d 868, 878 (Mich. 1998). The malice element is satisfied "by showing that the defendant possessed the intent to kill, to do great bodily

10

harm, or to create a high risk of death or great bodily harm with the knowledge that death or great bodily harm would be the probable result. . . . Malice can be inferred from evidence that a defendant intentionally set in motion a force likely to cause death or great bodily harm." *People v. Djordjevic*, 584 N.W.2d 610, 612 (Mich. Ct. App. 1998) (internal citation omitted).

"To establish that a defendant aided and abetted a crime, a prosecutor must show that (1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or knew that the principal intended to commit the crime at the time he gave aid and encouragement." *Riley v. Berghuis*, 481 F.3d 315, 322 (6th Cir. 2007), *citing People v. Carines*, 460 Mich. 750, 597 N.W.2d 130, 135 (1999). An "aider and abettor's state of mind may be inferred from all the facts and circumstances. Factors that may be considered include a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime." *People v. Carines*, 460 Mich. 750, 758 (1999). "The quantum of aid or advice is immaterial as long as it had the effect of inducing the crime." *People v. Lawton*, 196 Mich. App 341, 352 (1992).

The Michigan Court of Appeals first concluded that Petitioner had a motive either to kill Merritt or cause him great bodily harm. The court of appeals noted in particular the following evidence presented at trial to reach this conclusion: Merritt previously physically abused Petitioner; Petitioner was involved with someone else and in the process of moving out of the home she shared with Merritt; and Petitioner and Merritt

11

argued before he was killed. The Michigan Court of Appeals further held that the prosecutor established malice, reasoning as follows:

> Shortly before Merritt was shot, defendant went to Edwards' home. Afterward, Edwards, Sir Gawain Floyd, and several others accompanied defendant to the home she shared with Merritt. Defendant admitted that she was aware that Floyd had a gun. She told the police that she was aware that Floyd was "coming packed," meaning that he intended to either "bring his boys" or a gun. Shortly after defendant entered the house, Floyd kicked in the door. Floyd, Edwards, and others rushed inside the house, chased Merritt to a back bedroom, and then forced their way into the bedroom. They assaulted Merritt and then Edwards shot him. During th incident, defendant hindered an attempt by Merritt's father to call 911, thereby supporting an inference that defendant intended for Merritt to be killed. Also, after the offense, defendant returned to Edward's home, thereby supporting an inference of concert of action. Viewed in a light most favorable to the prosecution, the evidence was sufficient to enable a rational trier of fact to find the necessary element of malice beyond a reasonable doubt. Thus, the evidence was sufficient to support defendant's conviction of second-degree murder.

*People v. Hale*, 2009 WL 103656 at * 3.

The Court is satisfied that the Michigan Court of Appeals' decision finding sufficient evidence to support the jury's verdict is reasonable. The evidence supported the prosecution's theory that Petitioner set into motion a series of events which resulted in Merritt's death. Petitioner is therefore not entitled to habeas relief on this claim.

## V. Conclusion

For the reasons stated above, Petitioner's petition for a writ of habeas corpus is DENIED.

Furthermore, reasonable jurists would not debate the Court's assessment of Petitioner's claims, nor conclude that the issues deserve encouragement to proceed

12

further. The Court therefore DECLINES to grant a certificate of appealability under 28 U.S.C. § 2253(c)(2). *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). However, if Petitioner chooses to appeal, she may proceed *in forma pauperis* on appeal because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

    SO ORDERED.

                          S/Avern Cohn
                          AVERN COHN
                          UNITED STATES DISTRICT JUDGE

Dated: April 13, 2012

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, April 13, 2012, by electronic and/or ordinary mail.

                          S/Julie Owens
                          Case Manager, (313) 234-5160